UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID COPELAND and SHERRY COPELAND, on behalf of themselves and all others similarly situated,<br><br>             Plaintiffs,<br><br>   v.<br><br>ALLSTATE INSURANCE COMPANY. and ALLSTATE NEW JERSEY INSURANCE COMPANY,<br><br>             Defendants. | Civ. No. 14-1556 (AMD)(JO) |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE THE EXPERT DECLARATIONS AND ATTACHED REPORTS OF CRAIG BARNET, HUBERT KLEIN AND GERALD DOLAN REGARDING CLASS-WIDE INJURY OR DAMAGES**

Robert H. King, Jr. (PHV)
Brendan E. Zahner
1221 Avenue of the Americas
New York, New York 10020-1089
Tel: (212) 768-6700
Fax: (212) 768-6800
robert.kingjr@dentons.com
brendan.zahner@dentons.com

*Counsel for Defendants*

## INTRODUCTION

Plaintiff purchased a Standard Flood Insurance Policy ("SFIP") from Allstate Insurance Company ("Allstate") pursuant to the National Flood Insurance Program ("NFIP"). Premiums paid for SFIPs are established by FEMA based upon several rating factors, including whether the property is located in a high risk or lower risk flood zone as designated by FEMA. Although Plaintiff's property was located for many years in Zone A, a high risk flood zone, in 2007 the flood zone changed to Zone X, a lower risk zone. Plaintiff claims that Allstate engaged in an "deceptive act or practice" in violation of New York General Business §349 ("NY GBL 349") by continuing to include the prior Zone A designation in her subsequent policy renewals.

Plaintiff brings her claim on behalf of a putative class. In support of her class certification motion, Plaintiff has submitted three expert declarations (with attached expert reports) that form the underpinning of her class definition and argument that class-wide proof of injury is possible. As to these issues, the declarations opine that a change from a high-risk flood zone to a lower risk flood zone *always* results in a lower premium, and therefore every class member was overcharged premium. The declarations also opine that Allstate can "easily" compute the amount of overcharge by using rating software versions in place at the time.

However, these expert declarations and their attached reports are not admissible under Federal Rule of Evidence 702 because they are based upon a gerrymandered analysis that totally ignores a majority of the class as defined by Plaintiff, and therefore cannot establish that proof of class-wide injury is possible. The declarations opinions that Allstate can "easily" compute class-wide damages is without adequate foundation, and thus inadmissible as well. As shown more fully below, Defendants' motion to strike the declarations of Craig K. Barnett, Hubert Klein, and Gerard Dolan should be granted.

## BACKGROUND

### A. The Class Definition Requires Establishing That All Class Members "Paid Excess Premiums."

Plaintiff has sought certification of a class defined as:

> All persons and entities that purchased flood insurance policies for real property located within the State of New York from Allstate prior to September 2007, whose flood zones in which the properties are located changed thereafter from high-risk flood zones (e.g., Zone A), to lower-risk flood zones (e.g., Zone X), who renewed their flood insurance policies thereafter, and paid excess premium for their renewal flood insurance policies as their renewal policies had been priced based upon the inaccurate, higher-risk flood zone.

(Dkt. 76-8 at p. 1.) To determine class membership under this definition, it must be shown that each putative class member "paid excess premiums." As shown in Allstate's Memorandum in Opposition to Plaintiff's Motion for Class Certification, if individualized determinations are needed to determine whether each class member "paid excess premium," the class is not "ascertainable" and hence cannot be certified. (Allstate Mem., pp.13-16.)

Plaintiff attempts to solve this problem by asserting that "[b]ased on the calculations and rating variables in the NFIP Flood Insurance Manual, and the scenarios applicable to Ms. Copeland and the proposed Class, in every year since 2007, any property located in a FIRM Zone X would have a lower annual premium than FIRM zone A." (Pl. Mem., Dkt. #76-8, at p. 7.) To support this argument, Plaintiff has submitted declarations (with attached expert reports) from three proposed experts: Craig Barnet (the "Barnet Declaration)," Hubert Klein (the "Klein Declaration") and Gerard Dolan (the "Dolan Declaration"). (Dkt. 76-10, 76-14 and 80.)

### B. The Barnet Declaration Opinions.

Mr. Barnet offers four opinions that supposedly buttress Plaintiff's assertion that in every year since 2007, any property located in a FIRM Zone X would have a lower annual premium than FIRM Zone A. Specifically, Barnet opines that:

(1) A change from Zone A to Zone X "results in a significant overall total annual premium reduction. " (Dkt. # 76-10 at p. 5.)

(2) Although the premium rates for Zone A are not always higher than they are in Zone X for a pre-FIRM property, the total premium paid "is always higher based on the scenarios I used" considering the rates for additional insurance, Increased Cost of Compliance ("ICC") coverage and a Reserve Fund Assessment. (*Id*. at pp.6-7.)

(3) Any property located in Zone X would have a lower annual premium than Zone A because the rate of Additional Limits of Insurance is significantly lower in Zone X, and the cost of ICC coverage in Zone A is significantly higher. (*Id.* at p. 8.)

(4) The total premium for flood insurance coverage for pre-FIRM real property situated in Zone A is 54.1999% higher than the total premium for flood insurance coverage for pre-FIRM real property situated in Zone X. (*Id.* at 8-9.)

Each of these four opinions is based upon the following assumptions: "I used the scenario of going from FIRM Zone 'A'. . . to a FIRM Zone 'X'. . . and made the assumptions of a primary residence with a pre-FIRM date of construction of 1940, single or two family residences, with and without a basement and a Base Flood Elevation (BFE) of zero." (*Id.* at pp. 5-6; 7; 8; 9.)

Mr. Barnet also opined that Allstate would be able to "easily compute" the damages for each class member "using the rating software version(s) in place at the time of each policyholder's renewal . . ." (Dkt. 76-10, p.10.) No evidence of any kind is cited to support this "opinion."

### C. The Klein Declaration And Opinions.

Mr. Klein offers two opinions:

(1) "As a result of the improper flood zone designation, the Copelands paid excess premiums totaling $309.00 for the renewal policy periods May 18, 2-11 to July 21, 2013." (Dkt. 76-14, p. 5.)

(2) "[T]he defined Class suffered damages in the form of excess premiums in the same way as the Copelands." (*Id.*at p. 6.)

Mr. Klein's opinion concerning class-wide injury relies entirely on discussions with Mr. Barnet, who provided him with two key assumptions: (a) "[t]he flood zone designation is a

primary factor in the determination of flood insurance rates and flood insurance premiums," and (b) "[f]or scenarios concerning the defined Class changing from a high-risk flood zone . . . to a low-risk flood zone . . . results in a lower total premium paid by the policy, holding all other rating factors constant." (Dkt. # 76-14, p. 6.) Mr. Klein also "understand[s]," based upon discussions with Mr. Barnet, that "Allstate has the ability to easily calculate the adjusted premiums for these policy holders by using legacy versions of their flood insurance rating software." (*Id.*)

### D. The Dolan Declaration And Opinions.

Mr. Dolan offers two opinions regarding the ability to proof injury on a class-wide basis:

(1) Insureds in high-risk flood zones pay a higher per dollar cost of insurance in comparison to insureds in a lower-risk flood zone (Dkt. #80, p.14 of 16.)

(2) Allstate, through one or more of its vendors, can determine damages for Plaintiffs and the Class simply by correcting the flood zone of the property. (*Id.*)[1]

These opinions are supported by no calculation, analysis or supporting documentation. In reaching his opinions, Mr. Dolan did not consult with any version of the NFIP Flood Insurance

---

[1] Mr. Dolan offers a laundry list of other opinions of questionable admissibility that are unrelated to class certification. For example, Mr. Dolan opines that all consumers are ignorant of the flood zone of their property and do not provide their agents with flood zone information (Dkt. # 80, page10-11 of 16), which is not only rank speculation, but is also contrary to John LePore's testimony (upon which Dolan claims to have relied) that "an insured will come with a letter from the bank stating the property's flood zone . . . ." (LePore Dep., p. 24:12-25:3, King Decl. Ex. 1.) Even an expert is not permitted to base opinions on speculation. *Sicav v. James Jun Wang*, 12 Civ. 6682 (PAE), 2015 WL 268855 (S.D.N.Y. Jan. 21. 2015) (expert report on class certification must provide "concrete, non-speculative basis" to reach conclusion that showing liability as to class representative would resolve liability as to the broadly-defined class.) Mr. Dolan also opines on legal issues such as whether Allstate has a duty to notify policyholders of changes in flood zones and whether Allstate's conduct is misleading. Expert opinions that include legal conclusions are not admissible. *Desilva v. North Shore-Long Island Jewish Health System, Inc.*, 27 F.Supp.3d 313, 331 (E.D.N.Y. 2014) ("[the expert] report includes impermissible legal conclusions that the Court should not consider in deciding the certification issue, on summary judgment or at trial.") Allstate reserves the right to further challenge Mr. Dolan's non-class related opinions at a later time.

Manual containing the rate tables used to establish premiums. Although Mr. Dolan's report indicates that these opinions are based on his "own experience and knowledge of processing Allstate flood insurance policies," he does not claim to have had any experience or knowledge of Allstate's "vendors" or their capabilities. (Dkt. # 80, p. 14 of 16.)

**ARGUMENT**

Under Federal Rule of Evidence ("FRE") 702, expert testimony may be admitted only if the opinion is based on sufficient facts or data and, the opinion is the product of reliable principles and methods and those principles and methods were reliably applied to the facts of the case. (FRE 702.) When expert testimony is proffered in support of a motion to certify a class action and is challenged, as here, the Court must review whether the expert reports are admissible to establish the requirements of Rule 23. *In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 66 (S.D.N.Y. 2009); *Fort Worth Emp. Ret. Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116, 127 (S.D.N.Y. 2014). "The party submitting expert testimony bears the burden of establishing that it is admissible by a preponderance of the evidence." *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007).

"[W]hen an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony." *Amorgianos v. National R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002). A proposed expert must "establish that they have reasonably applied reliable methods to sufficient facts." *Oleg Cassini, Inc. v. Electrolux Home Products, Inc.*, 11 Civ. 1237 (LGS)(JCF), 2014 WL 146811894 *8 (S.D.N.Y. 2014), *citing Cedar Petrochemicals, Inc. v. Dongbu Hannong Chemical Co.*, 769 F.Supp.2d 269, 287–88 (S.D.N.Y. 2011). If the experts "have ignored a large amount of information that calls many aspects of [their] theory into question" their opinions should be excluded. *See In re Rezulin Products Liability Litigation*, 369

F.Supp.2d 398, 424 (S.D.N.Y. 2005)(excluding expert report).  Although it has been said that the standard for admitting expert testimony is liberal, a district court should not "admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert." *Fort Worth*, 301 F.R.D. at 127, *citing Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

As shown more fully below, Plaintiff cannot sustain her burden of establishing the admissibility of the opinions regarding class-wide injury set forth in the Barnet, Klein and Dolan Declarations identified above because all three experts have ignored available data showing that a change from Zone A to Zone X would not always result in a lower premium, and their opinions regarding Allstate's ability to "easily" compute class-wide damages is without adequate foundation.

**I.**

**THE BARNET DECLARATION'S OPINIONS SHOULD SHOULD BE STRICKEN BECAUSE THEY ARE NOT BASED UPON ALL AVAILABLE DATA AND CANNOT <u>ESTABLISH CLASS-WIDE INJURY</u>**

Although Mr. Barnet claims that his calculations "are specific to Plaintiffs and the Class" (Dkt.76- at p. 3), his analysis is expressly limited to scenarios involving "a primary residence with a pre-FIRM date of construction of 1940, single or two family residences, and with and without a basement and a Base Flood Elevation (BFE) of zero." (*Id.* at pp. 6, 7, 8, 9.)  A "pre-FIRM" constructed house is one built before the first Flood Insurance Rate Map ("FIRM") for the community in which it is located was promulgated by FEMA.  (J. Rath Decl., ¶ 2.)

But the putative class, as Plaintiff defines it, includes "all persons and entities that purchased flood insurance for real property located in the State of New York."  (Dkt. # 76-8, p. 1.)  Encompassed within that definition would be a variety of real property types that Mr. Barnet ignores.  For example, approximately 65% of Zone A policies in 2011 (the beginning of the class

period) insured "post-FIRM" properties. (J. Rath Decl. ¶ 9.) A "post-FIRM" constructed house is one that was built or substantially improved after the initial FIRM for the community in which it is located was promulgated by FEMA. (*Id.,* ¶ 2.) Other types of "real property" that putative class members could have insured that are ignored by Mr. Barnet's analysis include: (a) pre-FIRM non-residential properties, (b) pre-FIRM low-rise and high-rise Residential Condominium Building Association Policy ("RCBAP") properties and (c) pre-FIRM properties that opted to be rated with an elevation certificate, thereby using post-FIRM rates. (*Id.,* ¶ 12.)

It perhaps should be no surprise that Mr. Barnet's analysis ignores a majority of the class as defined, because there is no indication in his report that he was even aware of the class definition. Although Mr. Barnet's report specifically lists seven sources used in preparing his report, there is no indication in this list that he was ever even given the Amended Complaint, or the altered class definition used in Plaintiff's class certification motion. (Dkt. # 76-10, pp. 3-4 (listing the materials relied upon in preparing his report, which omits any reference to the Amended Complaint or class definition).

Interestingly, this is not true of Mr. Klein's report, which contains a verbatim recitation of the class definition used by Plaintiff in moving for class certification, although Mr. Klein wrongly indicates that the definition comes from the Amended Complaint (which it clearly does not). So it appears that a sort of "shell game" was afoot to manufacture a set of opinions that fit Plaintiff's theory of the case, although at odds with the facts. In order to opine that Zone X premiums are always less than Zone A premiums, Mr. Barnet assumed that all class members' properties were like Plaintiff's -- *i.e.*, pre-FIRM -- and ignored the class definition. Then, Mr. Klein was given the class definition, and in reliance upon Mr. Barnet's limited analysis, Mr.

Klein dutifully opined that Zone X premiums were always less than Zone A premiums for the class as defined.

But this gerrymandered approach does not withstand even minimal scrutiny. A non-exhaustive list of examples from categories of properties unaddressed by Mr. Barnet demonstrates that a change from a Zone A to a Zone X would not necessarily result in a reduction in payment of premium:

(1) Mr. Barnet's analysis wholly ignores post-FIRM residential rates. Premiums for post-FIRM properties are often higher under Zone X rating than if they were rated as Zone A. For example:

    (a) Zone X premiums are *always* higher than AE Zone premiums for a post-FIRM houses without basements where the elevation of the lowest floor above Base Flood Elevation ("BFE") is one foot or more. (J. Rath Decl. ¶ 14 (a) (1); FEMA Decl. ¶ 4.)

    (b) Zone X premiums are *always* higher than Zone AE premiums for post-FIRM low-rise RCBAP where the elevation of the lowest floor above BFE is plus one or greater. (J. Rath Decl. ¶ 14 (a) (2); FEMA Decl. ¶ 4.)

    (c) Zone X premiums are *always* higher than Zone AE premiums for post-FIRM high-rise RCBAP where the elevation of the lowest floor above BFE is plus one or greater. (J. Rath Decl., ¶ 14 (a) (3); FEMA Decl. ¶ 4.)

    (d) Zone X premiums are *always higher* than Zone AE rates for post-FIRM non-residential property where the elevation is plus one or greater when compared to the BFE. (J. Rath Decl. ¶ 14 (a) (4); FEMA Decl. ¶ 4.)

(2) Mr. Barnet's analysis wholly ignores pre-FIRM houses with elevations greater than zero. Zone X premiums are *always* higher than Zone A premiums for a pre-FIRM house post-FIRM rated having an Elevation Certificate showing the lowest rated floor to be 2 feet or more above BFE. (J. Rath Decl. ¶ 14 (b); FEMA Decl. ¶ 4.)

(3) Mr. Barnet's analysis wholly ignores pre-FIRM non-residential properties, which would be part of the proposed class as defined. Zone X premiums are *always* higher than unnumbered Zone A premiums for pre-FIRM non-residential properties post-FIRM rated having an Elevation Certificate showing the lowest rated floor to be 2 feet or more above BFE (J. Rath Decl. ¶ 14 (c); FEMA Decl. ¶ 4.)

(4) Mr. Barnet's analysis wholly ignores pre-FIRM low-rise RCBAP. Whether Zone X premiums would be less than Zone A premiums would depend on the limits purchased and the number of units in the building; depending upon the number of units in the building, as limits increase, Zone X premiums become higher than Zone unnumbered A premiums. (J. Rath Decl. ¶ 14 (d); FEMA Decl. ¶ 4.)

(5) Zone X premiums are *never* lower than Zone unnumbered A for pre-FIRM low-rise RCBAP post-FIRM rated having an Elevation Certificate showing the lowest rated floor to be 2 feet or more above BFE. (J. Rath Decl. ¶ 14 (e); FEMA Decl. ¶ 4.)

(6) Mr. Barnet's analysis wholly ignores pre-FIRM high-rise RCBAP. Zone X premiums are *never* lower than Zone unnumbered A premiums for pre-FIRM high rise RCBAP for limits above $315,000. Zone X premiums are *never* lower than Zone A premiums for pre-FIRM high-rise RCBAP post-FIRM rated having an Elevation Certificate showing the lowest rated floor to be 2 feet or more above BFE. (J. Rath Decl. ¶ 14 (f); FEMA Decl. ¶ 4.)

In short, Mr. Barnet's opinions that changing from Zone A to Zone X always results in lower premiums "ignore[s] a large amount of information that calls many aspects of [the] theory into question," is inadmissible and should be stricken. *See In re Rezulin Products Liability Litigation*, *supra,* 369 F.Supp.2d at 424.

In addition, Mr. Barnet's opinion that Allstate can "easily" compute damages using old versions of rating software rests on the flawed assumption that Allstate maintains outdated versions of software that would have been used in the past. Mr. Barnet provides no basis for this assumption and in fact neither Allstate nor its vendors have access to prior versions of rating software going back to 2011. (J. Rath Decl. ¶16.) An opinion that is nothing more than the "*ipse dixit* of the expert" is not admissible. *Fort Worth*, 301 F.R.D. at 127, *citing Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

## II.

### THE KLEIN DECLARATION'S OPINIONS SHOULD SHOULD BE STRICKEN BECAUSE THEY ARE NOT BASED UPON ALL AVAILABLE DATA AND DO NOT ESTABLISH CLASS-WIDE INJURY

Mr. Klein's opinion that "the defined class suffered damages in the form of excess premiums in the same way as the Copelands" is not based upon any analysis or calculation Mr. Klein performed. Instead, as shown above (at pages 3-4), Mr. Klein's opinion concerning class-wide damages is entirely derivative of Mr. Barnet's flawed assertion that changing from Zone A to Zone X always results in lower premiums. Equally unfounded is Mr. Klein's "understand[ing] that Allstate can "easily" calculate damages using "legacy versions of their flood insurance rating software," because that "understanding" is based entirely upon conversations with Mr. Barnet and not upon any knowledge or expertise possessed by Mr. Klein. Mr. Klein's opinion is thus inadmissible because it "is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached." (*Amorgianos, supra*, 303 F.3d at 265) and constitutes nothing more than the "*ipse dixit* of the expert." *Fort Worth, supra.*

## III.

### THE DOLAN DECLARATION'S OPINIONS SHOULD BE STRICKEN BECAUSE THEY ARE NOT BASED UPON ALL AVAILABLE DATA AND DO NOT ESTABLISH CLASS-WIDE INJURY

As noted above, most of Mr. Dolan's opinions are not germane to class certification and thus should not be a considered at this stage. *Fort Worth*, 301 F.R.D. at 126.

Mr. Dolan's first class-related opinion (number 15), that insureds in high risk flood zones pay a higher per dollar cost of insurance (Dkt. 80 at p. 14 of 16), is not the product of any disclosed calculations or analysis of SFIP premium rates. Mr. Dolan simply bases this opinion on "my own experience and knowledge of processing Allstate flood insurance policies . . . ." (*Id.*)

Mr. Dolan provides no indication whether he has processed one, ten or hundreds of flood insurance policies, or if he has ever actually compared premium rates between high-risk and low-risk flood zones. In all events, in light of the demonstration above that demonstrates that Zone X premium rates are not always less than Zone A premium rates for a variety of property types covered by the class definition, it is evident that Mr. Dolan's opinion is nothing more than the "*ipse dixit* of the expert," is inadmissible, and should be stricken. *Fort Worth, supra.*

Mr. Dolan's second class-related opinion (number 16), that "Allstate, through one or more of its vendors, can determine damages for the Plaintiffs and the Class simply by correcting the flood zone of the property" also lacks any foundation, other than Mr. Dolan's "own experience and knowledge of processing Allstate flood insurance policies . . . ." (Dkt. # 80, p. 14 of 16.) Again, other than this conclusory statement, there is no indication that Mr. Dolan has any experience in asking Allstate to correct a flood zone for a property, much less knowledge or experience with Allstate's vendors concerning their ability to access prior versions of rating software. As noted above, neither Allstate nor its flood processing vendor have access to prior versions of rating software going back to 2011. (J. Rath Decl. ¶ 16.) It is thus evident that Mr. Dolan's opinion is nothing more than the "*ipse dixit* of the expert," is inadmissible, and should be stricken. *Fort Worth, supra.*

## **CONCLUSION**

For all of the foregoing reasons, Defendants respectfully request that the Court grant their motion to strike the class certification related aspects of the Barnet, Klein and Dolan Declarations and attached expert reports identified above.

Dated: New York, New York
March 14, 2016

DENTONS US LLP

By:    /s/ Robert H. King, Jr.
       Robert H. King, Jr. (PHV)
       Brendan E. Zahner
       1221 Avenue of the Americas
       New York, New York 10020-1089
       Tel: (212) 768-6700
       Fax: (212) 768-6800
       robert.kingjr@dentons.com
       brendan.zahner@dentons.com

*Counsel for Defendants*