UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DAVID COPELAND and SHERRY
COPELAND, on behalf of themselves and all
others similarly situated,

                 Plaintiffs,

             - against -

ALLSTATE INSURANCE COMPANY, and
ALLSTATE NEW JERSEY INSURANCE
COMPANY,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Case No. 14 Civ. 01556 (AMD)(JO)


**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO STRIKE THE EXPERT DECLARATIONS AND ATTACHED REPORTS
OF CRAIG BARNET, HUBERT KLEIN, AND GERARD DOLAN
<u>REGARDING CLASS-WIDE INJURY OR DAMAGES</u>**

Hunter J. Shkolnik
Paul J. Napoli
Annie E. Causey
Salvatore C. Badala
NAPOLI SHKOLNIK PLLC
350 Fifth Avenue, Suite 7413
New York, New York 10118
<u>hunter@napolilaw.com</u>
<u>pnapoli@napolilaw.com</u>
<u>acausey@napolilaw.com</u>
<u>sbadala@napolilaw.com</u>
Tel: (212) 397-1000
Fax: (646) 843-7603

*Attorneys for Plaintiffs and the
Putative Class*

# Table of Contents

PRELIMINARY STATEMENT ..................................................................................................... 1

ARGUMENT ............................................................................................................................. 2

  I. CRAIG K. BARNET, CIC'S EXPERT DECLARATION AND ATTACHED REPORT SHOULD NOT BE STRICKEN BECAUSE THEY MEET THE REQUIREMENTS OF FEDERAL RULE OF EVIDENCE 702, ARE BASED UPON ALL AVAILABLE DATA, ARE WITH ADEQUATE FOUNDATION, AND ARE NOT IPSE DIXIT ................................................................................ 4

    A. Craig K. Barnet, CIC's Expert Declaration and Attached Report Are Admissible Because Mr. Barnett, CIC Has Scientific, Technical, and Other Specialized Knowledge, The Declaration and Attached Report Are Based On Sufficient Facts And Data, The Declaration and Attached Report Are The Product of Reliable Principles and Methods, and Mr. Barnet, CIC Has Reliably Applied The Principles and Methods To The Facts of This Case. .................................................... 5

    B. Craig K. Barnet, CIC's Opinion That "Allstate Would be Able to Easily Compute the Damages for Each Policyholder Placed in A Higher Hazard FIRM Zone With the Correct Lower Hazard Firm Zone" Is Not Ipse Dixit Because Mr. Barnet, CIC Has Experience Directly Related to This Case and His Opinion is Supported by Deposition Testimony from a Representative of Allstate's Flood Processing Vendor. ................... 9

  II. HUBERT KLEIN, CPA/ABV/CFF, CVA, CFE, CGMA'S EXPERT DECLARATION AND ATTACHED REPORT SHOULD NOT BE STRICKEN BECAUSE THEY MEET THE REQUIREMENTS OF FEDERAL RULE OF EVIDENCE 702, ARE BASED UPON ALL AVAILABLE DATA, ARE WITH ADEQUATE FOUNDATION, AND ARE NOT IPSE DIXIT .................................................................................................................................. 11

  III. GERARD T. DOLAN'S EXPERT DECLARATION AND ATTACHED REPORT SHOULD NOT BE STRICKEN BECAUSE THEY MEET THE REQUIREMENTS OF FEDERAL RULE OF EVIDENCE 702, ARE BASED UPON ALL AVAILABLE DATA, ARE WITH ADEQUATE FOUNDATION, AND ARE NOT IPSE DIXIT .......................................................................... 15

CONCLUSION ......................................................................................................................... 17

# Table of Authorities

**Cases**

*Amorgianos v. Amtrak*, 303 F.3d 256 (2d Cir. 2002) ..................................................... 3, 4, 13, 14

*Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18 (2d Cir. 1996)................................................... 3

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)........................................... 3

*In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55 (S.D.N.Y. 2009) .................................. 3, 4, 8, 9

*In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717  (3d Cir. 1994) ..................................................... 4

*In re Puda Coal Secs., Inc.*, 30 F.Supp.3d 230 (S.D.N.Y. 2014) ................................ 5, 10, 14, 17

*In re Rezulin Prods. Liab. Litig.*, 369 F.Supp.2d 398 (S.D.N.Y. 2005) ................................ 4, 5, 8

*Israel v. Aprings Indus.*, No. 98-CV-5106, 2006 WL 3196956

    (E.D.N.Y. November 3, 2006) ................................................................. 10, 14, 17

*Nimely v. City of New York*, 414 F.3d 381 (2d Cir. 2005) ............................................................ 3

*United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007) ....................................................... 3

*Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC*, 571 F.3d 206 (2d Cir. 2009)....... 3

**Statutes**

General Business Law § 349................................................................................................... 1, 2

**Rules**

Fed. R. Evid. 702 ............................................................................................................. passim

## PRELIMINARY STATEMENT

On February 22, 2016, Plaintiff moved the Court to enter an order granting Plaintiffs' Motion for Class Certification and Appointment of Sherry Copeland as Class Representative on the Amended Complaint's New York General Business Law § 349 claim, and Appointment of Hunter J. Shkolnik, Esq., and Paul J. Napoli, Esq., of Napoli Shkolnik PLLC as Class Counsel. (Plaintiffs' Motion for Class Certification, Appointment of Plaintiff Sherry Copeland As Class Representative and Appointment of Class Counsel, Dkt. #75). In support, Plaintiff submitted the expert reports and declarations of Craig K. Barnet, CIC, Hubert Klein, CPA/ABV/CFF, CVA, CFE, CGMA, and Gerard T. Dolan. (Dkt. #76-9, 76-10, 76-11, 76-12, 76-13, 76-14). The expert reports provide each of the experts' backgrounds, education, experience, and bases for their opinions and conclusions.

On March 14, 2016, Defendants filed a motion to strike the expert declarations and attached reports of Craig K. Barnet, CIC, Hubert Klein, CPA/ABV/CFF, CVA, CFE, CGMA, and Gerard T. Dolan. (Dkt. #87). Defendants' motion to strike attacks the opinions and conclusions of the experts while ignoring the experts' backgrounds, education, experience, bases for their opinions and conclusions, as well as deposition testimony from a representative of Allstate's flood insurance processing vendor and an Allstate Agency Owner. Defendants simply disagree with the conclusions and opinions of the experts and fail to provide a valid basis for their motion to strike.

*First,* the declarations and attached expert reports of Mr. Barnet, Mr. Klein, and Mr. Dolan meet the requirements of Federal Rule of Evidence 702. *Second*, the declarations and attached expert reports of Mr. Barnet, Mr. Klein, and Mr. Dolan are based upon all available data. *Third*, the declarations and attached expert reports of Mr. Barnet, Mr. Klein, and Mr. Dolan are with adequate foundation. *Fourth*, the declarations and attached expert reports of Mr. Barnet, Mr. Klein, and Mr. Dolan are not *ipse dixit*. Therefore, the Court should deny Defendants' motion to strike in its entirety.

Plaintiff Sherry Copeland purchased a Standard Flood Insurance Policy ("SFIP") from Allstate when she first purchased her home in 1973. (Sherry Copeland Dep., pp. 13:19-25; 14:2, Dkt. #76-2). "FEMA enacted the Write Your Own Program, which allows companies, private companies such as Allstate[,] to write flood insurance program policies with their corporate logo. They are paid a fee in order to do so." (Deposition Transcript of Allstate Representative Jennifer Rath, dated November 12, 2015, p. 8:9-13, Dkt.# 76-5). Allstate estimates that 10,000 flood policies in the New York metropolitan area had their flood zones change from Zone A to Zone X in 2007, and yet, just like Ms. Copeland, their insurance policies with Allstate were not updated to reflect the change. (Deposition Transcript of Jennifer Rath, dated February 12, 2016, pp. 144:10-13, 24; 145:1-11, 17-20, Dkt. 76-3).

Ms. Copeland commenced the instant action on her own behalf, and on the behalf of all similarly situated Allstate issued flood insurance policy holders, alleging that Allstate overcharged her for the flood coverage she purchased. (Sherry Copeland Dep., pp. 74:17-21, Dkt. #76-2). Ms. Copeland and the proposed class seek as damages the refund of the excess premium they paid due to the erroneous higher-risk flood zone designation (*e.g.*, Zone A) that remained on their polices after 2007, when the policy should have been re-written to include a lower-risk flood zone designation (*e.g.*, Zone X). Additionally, Ms. Copeland and the proposed class seek penalty damages against Allstate pursuant to General Business Law § 349 because Allstate knew (actual or constructive) that her and the class members' flood zones changed from a higher-risk flood zone (*e.g.*, Zone A) to a lower-risk flood zone (*e.g.*, Zone X), yet kept silent and continued to charge and accept premiums priced on a higher-risk flood zone (*e.g.,* Zone A).

## **ARGUMENT**

Federal Rule of Evidence 702 provides that expert testimony may be admitted if: (i) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to

understand the evidence or to determine a fact in issue," (ii) "the testimony is based on sufficient facts or data," (iii) "the testimony is the product of reliable principles and methods," and (iv) "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. "While the proponent of expert testimony has the burden of establishing by a preponderance of the evidence that the admissibility requirements of Rule 702 are satisfied . . . the district court is the ultimate 'gatekeeper.'" *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593 n.10 (1993)). The Second Circuit stated, "It is a well-accepted principle that Rule 702 embodies a liberal standard of admissibility for expert opinions . . . ." *Nimely v. City of New York*, 414 F.3d 381, 395 (2d Cir. 2005). In this case, the "*Daubert* inquiry at the class certification stage remains limited by Rule 23 . . ." because Defendants' motion to strike comes at the class certification stage. *In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 66 (S.D.N.Y. 2009). Therefore, "[a]t this stage, 'the Court may only examine the expert reports as far as they bear on the Rule 23 determination . . . .'" *Id.*

"[A] trial judge should exclude expert testimony if it is speculative or conjectural or based on assumptions that are 'so unrealistic and contradictory as to suggest bad faith . . . .'" *Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC*, 571 F.3d 206, 213-14 (2d Cir. 2009) (citing *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996)). "Other contentions that the assumptions are unfounded go to the weight, not the admissibility, of the testimony." *Id.* at 214 (citing *Boucher*, 73 F.3d at 21). "A minor flaw in an expert's reasoning or a slight modification of an otherwise reliable method will not render an expert's opinion *per se* inadmissible." *Amorgianos v. Amtrak*, 303 F.3d 256, 267 (2d Cir. 2002) (emphasis in the original). A judge should only exclude evidence "if the flaw is large enough that the expert lacks

'good grounds' for his or her conclusions." *Id.* at 267 (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 746 (3d Cir. 1994)).

"A disagreement with an expert is not a legitimate basis on which to strike that expert's opinion." *In re NYSE*, 260 F.R.D. at 68. Notably, "our adversary system provides the necessary tools for challenging reliable, albeit debatable, expert testimony." *Amorgianos*, 303 F.3d at 267. In *Daubert*, the Supreme Court stated, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. Notably, "'the rejection of expert testimony is the exception rather than the rule.'" *In re NYSE*, 260 F.R.D. at 65 (quoting Fed. R. Evid. 702, Advisory Committee Notes).

As discussed below, the expert declarations and attached reports of Craig K. Barnet, CIC, Hubert Klein, CPA/ABV/CFF, CVA, CFE, CGMA, and Gerard T. Dolan should not be stricken because they meet the requirements of Federal Rule of Evidence 702, are based upon all available data, are with adequate foundation, and are not *ipse dixit*.

## I.
## CRAIG K. BARNET, CIC'S EXPERT DECLARATION AND ATTACHED REPORT SHOULD NOT BE STRICKEN BECAUSE THEY MEET THE REQUIREMENTS OF FEDERAL RULE OF EVIDENCE 702, ARE BASED UPON ALL AVAILABLE DATA, ARE WITH ADEQUATE FOUNDATION, AND ARE NOT *IPSE DIXIT*

"A factor that courts have considered in *Daubert* analyses is whether an expert has accounted adequately for obvious alternative explanations." *In re Rezulin Prods. Liab. Litig.*, 369 F.Supp.2d 398, 425 (S.D.N.Y. 2005). "The fact that . . . [an] Algorithm was modified specifically for this litigation [does not] render [an expert report] inadmissible." *In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 68 (S.D.N.Y. 2009) (denying defendants' motion to strike the reports of plaintiff's experts).

"A district court . . . is not required 'to admit opinion evidence that is connected to existing data only by *ipse dixit* of the expert.'" *In re Rezulin Prods. Liab. Litig.*, 369 F.Supp.2d at 420. "Conclusory opinions are a form of '*ipse dixit*,' and often provide an insufficient basis upon which to assess reliability." *In re Puda Coal Secs., Inc.*, 30 F.Supp.3d 230, 250 (S.D.N.Y. 2014).

**A.**   **Craig K. Barnet, CIC's Expert Declaration and Attached Report Are Admissible Because Mr. Barnett, CIC Has Scientific, Technical, and Other Specialized Knowledge, The Declaration and Attached Report Are Based On Sufficient Facts And Data, The Declaration and Attached Report Are The Product of Reliable Principles and Methods, and Mr. Barnet, CIC Has Reliably Applied The Principles and Methods To The Facts of This Case.**

Applying the requirements of Fed. R. Evid. 702, the Court should deny Defendants' motion to strike and should admit the declaration and expert report of Mr. Barnet. *First*, Mr. Barnet has extensive experience within the risk management and insurance industry, has been actively involved in the procurement of flood coverage for both commercial and residential buildings for the past twenty years, and has provided an affidavit of merit, testimony, or deposition in five cases since 2013. (Craig K. Barnet, CIC Expert Report, p. 2, Dkt. #76-10). *Second*, Mr. Barnet's declaration and expert report are based on Plaintiff and the proposed class definition, Plaintiff's flood insurance policy declarations from 2006 until 2016, National Flood Insurance Program Flood Insurance Manuals from May 1, 2007 until November 1, 2015, the deposition testimony (and exhibits) provided on both November 12, 2015 and February 12, 2016 by Jennifer Rath, Allstate's Principal Flood Coordinator, who is responsible for making sure that Allstate adheres to the rules and regulations that exist for the National Flood Insurance Program under the Write Your Own Program, the deposition testimony (and exhibits) provided on February 3, 2016 by Richard Warren, Allstate's Human Resources Business Partner for New York State, who is responsible for all Allstate agencies and independent agencies in New York State, the deposition testimony (and exhibits) provided on February 2, 2016 by John Lepore, an

Allstate Agency Owner, the deposition testimony (and exhibits) provided on January 29, 2016 by Plaintiff Sherry Copeland, and the Standard Flood Hazard Determination Form. *Id.* at 3-5.

*Third*, Mr. Barnet's declaration and expert report are the products of reliable principles and methods because the calculations were derived from National Flood Insurance Program Flood Insurance Manuals[1] from May 1, 2007 until November 1, 2015, as well as facts specific to the Plaintiff and the proposed class definition. *Id.* at 4-5. *Fourth*, Mr. Barnet reliably applied the principles and methods to the facts of this case as evidenced in Mr. Barnet's "Rate Summary Guide Chart,"[2] the "Flood Manual Rating Comparison Chart,"[3] and the "Copeland Flood Premium from 2007 until 2013 Comparison Chart."[4] Therefore, the Court should admit the declaration and expert report of Mr. Barnet.

Defendants contend that Craig K. Barnet's "opinions that changing from Zone A to Zone X always results in lower premiums 'ignores a large amount of information . . . .'" (Def. Mem. p. 9, Dkt. # 88). Defendants' basis for this argument is that Mr. Barnet allegedly ignored a variety of real property types. *Id.* at 6. However, the real property types proposed by Defendants, if true, would not fit within Plaintiff's proposed class definition. The proposed class is defined as:

> All persons and entities that purchased flood insurance policies for real property located within the State of New York from Allstate prior to September 2007, whose flood zones in which the properties are located changed thereafter from

[1] The Flood Insurance Manual is "a manual that FEMA produces for the National Flood Insurance Program that all Write Your Own Companies are required to use in order to process flood insurance business." Deposition Transcript of Allstate Representative Jennifer Rath, dated November 12, 2015, pp. 7:21-24; 8:1, Dkt.# 76-5).

[2] Attached to Mr. Barnet, CIC's expert report as Exhibit C (Dk. #77-2).

[3] Attached to Mr. Barnet, CIC's expert report as Exhibit D (Dk. #77-3).

[4] Attached to Mr. Barnet, CIC's expert report as Exhibit E (Dk. #77-4).

high-risk flood zones (*e.g.*, Zone A), to lower-risk flood zones (*e.g.*, Zone X), who renewed their flood insurance policies thereafter, and *paid excess premium* for their renewal flood insurance policies as their renewal policies had been priced based upon the inaccurate, higher-risk flood zone.

(Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Class Certification, p. 5, Dkt. #76-8) (emphasis added). The proposed class definition includes only those persons and entities that paid excess premium, not those who did not pay excess premium. Additionally, in Mr. Barnet's report, he stated, "My calculations are specific to Plaintiffs and the Class . . . ." (Craig K. Barnet, CIC Expert Report, p. 3, Dkt. #76-10). Therefore, Mr. Barnet's calculations are specific to situations in which persons and entities paid excess premium. It would be impractical for Mr. Barnet to calculate scenarios that are not specific to Plaintiffs and the proposed class definition. Also, Defendants inaccurately state that Mr. Barnet opined that a change from a high-risk flood zone to a lower risk zone *always* results in a lower premium. (Def. Mem., pp. 1, 6, 9, Dkt. # 88) (emphasis in the original). However, in Mr. Barnet's second opinion, he stated, that based on the scenarios and factors he used, which were specific to Plaintiff and the proposed class definition, the total premium paid is always higher for pre-FIRM real property situated in FIRM Zone A in comparison to pre-FIRM real property situated in FIRM Zone X.[5] (Craig K. Barnet, CIC Expert Report, pp. 6-7, Dkt. #76-10). Defendants ignored Mr. Barnet's statement that his calculations were specific to Plaintiff and the Class and instead

---

[5] "While the National Flood Insurance Program ('NFIP') Flood Insurance Manual rates of flood insurance coverage for pre-FIRM (Flood Insurance Rate Map) real property situated in FIRM Zone 'A' are not always higher than the rates of flood insurance coverage for pre-FIRM real property situated in FIRM Zone 'X', the total premium paid, including additional charges for Increased Cost of Compliance (ICC), is always higher based on the scenarios I used because of three factors: (i) the rate for the Additional Limits of Insurance is significantly lower in FIRM Zone 'X' than in FIRM Zone 'A' and (ii) the ICC charge in Firm Zone 'A' is significantly greater than in FIRM Zone 'X'. (iii) in June of 2014 a Reserve Fund assessment was added. This assessment was multiplied against the base premium including the ICC charge. The higher the base premium, and higher the ICC charge, the higher the assessment would be, compounding the total premium overpayment."

presented the Court with real property types, without any specific calculations, that would not fit within Plaintiff's proposed class definition.

Defendants cite *In re Rezulin Prods. Liab. Litig.*, 369 F.Supp.2d 398, 425 (S.D.N.Y. 2005), in which the Court stated, "In this case, the plaintiffs' experts have ignored a large amount of information that calls many aspects of the silent injury theory into question." In *In re Rezulin*, the plaintiffs' experts (i) proposed a theory that was never tested or peer-reviewed, (ii) did not mention that the one study that looked for Rezulin-induced apoptosis in humans failed to find it, and (iii) proposed a theory that rested on a series of "empirically unbridgeable analytical gaps." *Id.* at 425, 437. In Defendants' motion, Defendants do not contend that Mr. Barnet's calculations in his "Rate Summary Guide Chart," the "Flood Manual Rating Comparison Chart," or the "Copeland Flood Premium from 2007 until 2013 Comparison Chart" were incorrect or that Mr. Barnet should have used an alternative method to calculate such premiums. Rather, Defendants incorrectly summarized Plaintiff's proposed class definition and proposed examples where a person or entity may not have paid excess premium, which would potentially not be included within this action based on Plaintiff's proposed class definition. Defendants simply propose categories of properties that may not meet Plaintiff's proposed class definition in an effort to discredit Mr. Barnet.

In *In re NYSE Specialists Sec. Litig.*, defendants moved to strike the reports of plaintiff's experts because the reports were based on incorrect facts, were tailored for litigation, were not the product of reliable principles, and did not apply methods reliably. *Id.* at 68. The Court denied all three allegations and reasoned that "the fact that . . . [an] Algorithm was modified specifically for this litigation [does not] render [an expert report] inadmissible," and the fact that the algorithm was adjusted "specifically to account for the circumstances described in the

Amended Complaint does not, on its own, render the opinion inadmissible." *Id.* Similarly, in this case, Mr. Barnet correctly provided results specific to Plaintiff and the Class, and therefore, Mr. Barnet's declaration and report should not be stricken.

**B.      Craig K. Barnet, CIC's Opinion That "Allstate Would be Able to Easily Compute the Damages for Each Policyholder Placed in A Higher Hazard FIRM Zone With the Correct Lower Hazard Firm Zone" Is Not Ipse Dixit Because Mr. Barnet, CIC Has Experience Directly Related to This Case and His Opinion is Supported by <u>Deposition Testimony from a Representative of Allstate's Flood Processing Vendor.</u>**

Defendants are incorrect to allege that Mr. Barnet's opinion that "Allstate would be able to easily compute the damages for each policyholder placed in a higher hazard FIRM Zone with the correct lower hazard firm zone" is nothing more than *ipse dixit.* (Def. Mem., p. 9, Dkt. # 88). First, as stated in Mr. Barnet's expert report, Mr. Barnet graduated from the University of Delaware with a B.S. Degree in Business Administration, held a Certified Insurance Counselor Designation from the National Alliance for Insurance Education and Research for the last fifteen years, and has been actively involved in the procurement of flood coverage for both commercial and residential buildings since 1995. (Craig K. Barnet, CIC Expert Report, p. 2, Dkt. #76-10). Second, Mr. Barnet stated,

> In reaching my opinions, I have drawn on my experience and knowledge as an insurance consultant and personal insurance broker. In both of these capacities I have been involved in the placement of both residential and commercial flood insurance policies for both building and contents coverage. As a broker, I have been involved in the rating process as well as presentation of quotations for coverage. As an insurance consultant, I have reviewed the work product of insurance brokers to ensure accuracy of the quotations that they prepared. Beyond my technical and personal background, I have used a variety of materials in preparing this report.[6]

---

[6] Mr. Barnet relied on materials such as (1) Plaintiff's flood insurance policy declarations from 2006 until 2016, (2) National Flood Insurance Program Flood Insurance Manuals from May 1, 2007 until November 1, 2015, (3) the deposition testimony (and exhibits) provided on both November 12, 2015 and February 12, 2016 by Jennifer Rath, Allstate's Principal Flood Coordinator, who is responsible for making sure that Allstate adheres to the rules and regulations that exist for the National Flood Insurance Program under the Write Your Own Program, (4) the

(Craig K. Barnet, CIC Expert Report, pp. 3-4, Dkt. #76-10).  Mr. Barnet's opinion is not *ipse dixit* because as discussed, Mr. Barnet's opinion was based on his experience, knowledge, documents, and testimony given in this case.  *See In re Puda Coal Secs., Inc.*, 30 F.Supp.3d 230, 257 (S.D.N.Y. 2014) (reasoning that the expert's opinions were "not *ipse dixit* but instead based on his experience . . . ," and therefore denying plaintiff's motion to exclude the expert's opinions); *see also Israel v. Aprings Indus.*, No. 98-CV-5106, 2006 WL 3196956, at *7 (E.D.N.Y. November 3, 2006) (stating "In fact, 'in certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony.'" (quoting Fed. R. Evid. 702, Advisory Committee Notes).

In the deposition testimony of Phillip Dunn, a Compliance Specialist at National Flood Services ("NFS"),[7] Mr. Dunn stated that NFS determines the premium amount for Allstate flood insurance policies through floodconnect (also referred to as www.allstateflood.com). (Dunn Deposition Volume I, p. 117:18-24, Dkt. #94-2). Mr. Dunn went on to state that refunds can be generated if NFS receives "a request to amend a particular rating element, and using the rating element results in a lower premium than what was reflected by using the previously used rating element." *Id.* at 122:1-6.  When asked if the process or requesting to amend a particular rating element could be applied to a change in flood zone, Mr. Dunn stated that NFS "can look at the effect if a policy is updated to reflect a different zone, then we [NFS] would see the difference in

---

deposition testimony (and exhibits) provided on February 3, 2016 by Richard Warren, Allstate's Human Resources Business Partner for New York State, who is responsible for all Allstate agencies and independent agencies in New York State, (5) the deposition testimony (and exhibits) provided on February 2, 2016 by John Lepore, an Allstate Agency Owner, (6) the deposition testimony (and exhibits) provided on January 29, 2016 by Plaintiff Sherry Copeland, and (7) the Standard Flood Hazard Determination Form.

[7] Allstate's flood insurance processing vendor.

premium associated with that zone for the current term." *Id.* at 122:7, 123:17-20. After Mr.

Dunn confirmed the process could be applied to a change in flood zone, Mr. Dunn confirmed

that the floodconnect system allows NFS to go back and determine a refund for a premium in

2008 based on the rates of that year. *Id.* at 124:7-22. Also, Mr. Dunn confirmed that the

floodconnect system allows NFS to determine how much an Allstate insured was paying in

premiums for 2008. (Dunn Deposition Volume II, p. 135:7-21, Dkt. #94-2). Mr. Dunn's

testimony further supports the opinion that Allstate would be able to easily compute the damages

for each policyholder placed in a higher hazard FIRM Zone with the correct lower hazard firm

zone. Therefore, Mr. Barnet's opinion that Allstate would be able to easily compute the damages

for each policyholder placed in a higher hazard FIRM Zone with the correct lower hazard firm

zone is not *ipse dixit*.

## II.

### HUBERT KLEIN, CPA/ABV/CFF, CVA, CFE, CGMA'S EXPERT DECLARATION AND ATTACHED REPORT SHOULD NOT BE STRICKEN BECAUSE THEY MEET THE REQUIREMENTS OF FEDERAL RULE OF EVIDENCE 702, ARE BASED UPON ALL AVAILABLE DATA, ARE WITH ADEQUATE FOUNDATION, AND ARE NOT *IPSE DIXIT*

Applying the requirements of Fed. R. Evid. 702, the Court should deny Defendants'

motion to strike and should admit the declaration and expert report of Mr. Klein. *First*, Mr.

Klein is a Partner in an accounting firm's forensic, litigation, and valuation services group, for

nearly thirty years he has consulted and provided expert opinions in matters including insurance

claim analysis, complex damages, business valuations, lost profit calculations, and due diligence

analysis, he has been appointed by the courts to serve as a Receiver, Provisional Director,

Special Fiscal Agent, and Court's Independent Forensic Auditor, has a B.S. in Accounting, an

A.S. Computer Systems Management, and serves on the New York State and New Jersey State

Society of Certified Public Accountants' Litigation Valuation Services Committees and Forensic Services Interest Group, (Exhibit A-1 of Hubert Klein's Expert Report, Dkt. #79).

*Second*, Mr. Klein's declaration and expert report are based on his experience in performing similar financial analyses and damages calculations, Plaintiff and the proposed class definition, Plaintiff's flood insurance policy declarations from 2006 until 2016, National Flood Insurance Program Flood Insurance Manuals from May 1, 2007 until November 1, 2015, the deposition testimony (and exhibits) provided on both November 12, 2015 and February 12, 2016 by Jennifer Rath, Allstate's Principal Flood Coordinator, who is responsible for making sure that Allstate adheres to the rules and regulations that exist for the National Flood Insurance Program under the Write Your Own Program, the deposition testimony (and exhibits) provided on February 3, 2016 by Richard Warren, Allstate's Human Resources Business Partner for New York State, who is responsible for all Allstate agencies and independent agencies in New York State, the deposition testimony (and exhibits) provided on February 2, 2016 by John Lepore, an Allstate Agency Owner, the deposition testimony (and exhibits) provided on January 29, 2016 by Plaintiff Sherry Copeland, the Standard Flood Hazard Determination Form, and discussions with Mr. Barnet. (Hubert Klein's Expert Report pp. 1, 2, 6, 7, Exhibit B, Dkt. #76-14).

*Third*, Mr. Klein's declaration and expert report are the products of reliable principles and methods because they were prepared in accordance with the American Institute of Certified Public Accountants Consulting Services Standards, and the calculations were derived from National Flood Insurance Program Flood Insurance Manuals[8] from May 1, 2007 until November 1, 2015. *Fourth*, Mr. Klein reliably applied the principles and methods to the facts of this case as evidenced in his "Summary of the Copeland's Excess Premium Damages" and "Class Member

---

[8] *See supra* footnote 1.

Damages" sections of his report. Therefore, the Court should admit the declaration and expert report of Mr. Klein.

Defendants argue that Mr. Klein's opinion that the defined Class suffered damages in the form of excess premiums in the same way as the Copelands was not based on any analysis or calculation. (Def. Mem., p. 10, Dkt. # 88). However, Mr. Klein's report specifically states that his opinion was based not only on his education, experience, documents and testimony in the record, but also on the fact that for all members of the Class the only rating factor that would need accounting on a renewal declaration is the flood zone designation, that the flood zone designation is a primary factor in the determination of flood insurance premiums, and that for scenarios concerning the defined Class changing from a high-risk flood zone to a low-risk flood zone results in a lower total premium paid by the insured. (Hubert Klein's Expert Report pp. 1, 2, 6, Dkt. #76-14). In addition to the many factors used by Mr. Klein to form his opinions, Mr. Klein spoke with Mr. Barnet. As discussed above (at pages 5-9), Mr. Barnet's declaration and expert report were based upon all available data and were made with adequate foundation.

Defendants cite *Amorgianos v. Amtrak*, 303 F.3d 256, (2d Cir. 2002), in which the Court stated, "[W]hen an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony." *Id* at 266. However, Defendants' failed to disclose that the *Amorgianos* Court also stated, "This is not to suggest that an expert must back his or her opinion with published studies that unequivocally support his or her conclusions." *Id.* The Court went on to mention that in previous cases, the Court "affirmed the district court's admission of medical expert testimony despite the fact that the expert 'could not point to a single piece of medical literature' that specifically supported the expert's opinion." *Id.* at 266-77. The Court

concluded, "Where an expert otherwise reliably utilizes scientific methods to reach a conclusion, lack of textual support may 'go to the weight, not the admissibility' of the expert's testimony." *Id* at 267. Therefore, if the Court were to follow Defendants' misguided standard, "Such a bright-line requirement would be at odds with the liberal admissibility standards of the federal rules and the express teachings of *Daubert*." *Id.*

Defendants are also incorrect to allege that Mr. Klein's opinion that he "understand[s] that Allstate has the ability to easily calculate the adjusted premiums for . . . policy holders by using legacy versions of their flood insurance rating software" is nothing more than *ipse dixit.* (Def. Mem., p. 10, Dkt. # 88). First, Mr. Klein's declaration and expert report are not *ipse dixit* because as discussed above (at pages 11-13), Mr. Klein's declaration and expert report were based on his education, experience, and documents and testimony in the record, the Plaintiff and the Class definition, and his conversations with Mr. Barnet. *See In re Puda Coal Secs., Inc.*, 30 F.Supp.3d 230, 257 (S.D.N.Y. 2014) (reasoning that the expert's opinions were "not *ipse dixit* but instead based on his experience . . . ," and therefore denying plaintiff's motion to exclude the expert's opinions); *see also Israel v. Aprings Indus.*, No. 98-CV-5106, 2006 WL 3196956, at *7 (E.D.N.Y. November 3, 2006) (stating "In fact, 'in certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony.'" (quoting Fed. R. Evid. 702, Advisory Committee Notes).

Additionally, as discussed above (at pages 10-11), the deposition testimony of Phillip Dunn supports Mr. Klein's opinion that he understands that Allstate has the ability to easily calculate the adjusted premiums for policy holders by using legacy versions of their flood insurance rating software. Therefore, Mr. Klein's opinion is not *ipse dixit*, and should not be stricken.

## III.

**GERARD T. DOLAN'S EXPERT DECLARATION AND ATTACHED REPORT
SHOULD NOT BE STRICKEN BECAUSE THEY MEET THE REQUIREMENTS OF
FEDERAL RULE OF EVIDENCE 702, ARE BASED UPON ALL AVAILABLE DATA,
ARE WITH ADEQUATE FOUNDATION, AND ARE NOT *IPSE DIXIT***

In Defendants' motion to strike, Defendants argue that Mr. Dolan offers two opinions,[9]

opinions fifteen and sixteen of his expert report, without supporting calculations, analysis, or

supporting documentation.[10]  However, applying the requirements of Fed. R. Evid. 702, the

Court should deny Defendants' motion to strike and should admit the opinions of Mr. Dolan.

*First*, Mr. Dolan was an agency owner of Allstate Insurance Company for eight years where he

solicited flood insurance business, explained and recommended coverages to consumers seeking

flood insurance, trained his employees concerning flood insurance, explained claims processes to

consumers, described the application process to consumers, quoted flood coverage, and

processed flood insurance applications. (Gerard T. Dolan's Expert Report, p. 2-3, Dkt. #80).

Additionally, Mr. Dolan created and delivered sales education programs for Allstate in the

downstate New York area, holds multiple National Sales and Leadership Awards as an Allstate

Sales Leader and Agency Owner, and holds a New York State property and casualty license. *Id.*

*Second*,  Mr. Dolan's opinions are based on his experience and knowledge as an Allstate

Agency owner, his experience and knowledge as an Allstate Territorial Sales Education Leader,

---

[9] Mr. Dolan opined: (i) Insureds in high-risk flood zones pay a higher per dollar cost of insurance
in comparison to insureds in a lower-risk flood zone, and (ii) Allstate, through one or more of its
vendors, can determine damages for Plaintiffs and the Class simply by correcting the flood zone
of the property. (Gerard T. Dolan's Expert Report, p. 14, Dkt. #80).

[10] Defendants' motion to strike contains a footnote alleging that Allstate reserves the right to
further challenge Mr. Dolan's non-class related opinions at a later time because they contain
"legal conclusions."  Mr. Dolan's report does not contain legal opinions, but if the Court found
that the report did contain legal conclusions, "limited legal conclusions . . . [do] not provide a
basis to strike the entirety of the report." *DeSilva v. N. Shore-Long island Jewish Health System*,
27 F.Supp.3d 313, 331 (E.D.N.Y. 2014).

the deposition testimony (and exhibits) provided on both November 12, 2015 and February 12, 2016 by Jennifer Rath, Allstate's Principal Flood Coordinator, who is responsible for making sure that Allstate adheres to the rules and regulations that exist for the National Flood Insurance Program under the Write Your Own Program, the deposition testimony (and exhibits) provided on February 3, 2016 by Richard Warren, Allstate's Human Resources Business Partner for New York State, who is responsible for all Allstate agencies and independent agencies in New York State, the deposition testimony (and exhibits) provided on February 2, 2016 by John Lepore, an Allstate Agency Owner, the deposition testimony (and exhibits) provided on January 29, 2016 by Plaintiff Sherry Copeland, the Standard Flood Hazard Determination Form, the Allstate Licensed Agency Flood Training Manual, the Allstate R3001A Exclusive Agency Agreement, the Allstate Agency Standards document, and the www.allstateflood.com portal. (Gerard T. Dolan's Expert Report, p. 4, Dkt. #80).

*Third*, Mr. Dolan's opinions are the product of reliable principles and methods because his opinions were derived from his experience and knowledge of processing Allstate flood insurance policies as an Allstate Agency Owner for nine years, as well as documents and testimony in the record. (Gerard T. Dolan's Expert Report, pp. 4, 14, Dkt. #80). *Fourth*, Mr. Dolan reliably applied the principles and methods to the facts of this case in reaching his opinions. Therefore, the Court should admit the opinions of Mr. Dolan.

Defendants are also incorrect to allege that Mr. Dolan's fifteenth and sixteenth opinions in his expert report are nothing more than *ipse dixit*. (Def. Mem., p. 11, Dkt. # 88). First, Mr. Dolan's opinions are not *ipse dixit* because as discussed above (at pages 15-16), Mr. Dolan's opinions were based on his education, experience, and documents and testimony in the record. *See In re Puda Coal Secs., Inc.*, 30 F.Supp.3d 230, 257 (S.D.N.Y. 2014) (reasoning that the

expert's opinions were "not *ipse dixit* but instead based on his experience . . . ," and therefore denying plaintiff's motion to exclude the expert's opinions); *see also Israel v. Aprings Indus.*, No. 98-CV-5106, 2006 WL 3196956, at *7 (E.D.N.Y. November 3, 2006) (stating "In fact, 'in certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony.'" (quoting Fed. R. Evid. 702, Advisory Committee Notes). Additionally, as discussed above (at pages 10-11), the deposition testimony of Phillip Dunn supports Mr. Dolan's opinion that Allstate, through one or more of its vendors, can determine damages for Plaintiffs and the Class simply by correcting the flood zone of the property. The deposition testimony of John Lepore, an Allstate Agency Owner who has processed hundreds of Allstate flood policies, supports Mr. Dolan's opinion that insureds in high-risk flood zones pay a higher per dollar cost of insurance in comparison to insureds in a lower-risk flood zone. In Mr. Lepore's deposition, he agreed that insureds generally pay a higher premium if they are in a higher-risk flood zone and stated that he understood a higher premium to "be a higher per dollar cost for the same coverage." (Lepore Deposition, pp. 43:6-11; 45:16-21., Dkt. 76-4). Therefore, Mr. Dolan's opinions are not *ipse dixit*, and should not be stricken.

## CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully request that the Court deny Defendants' motion to strike the expert declarations and attached reports of Craig K. Barnet, CIC, Hubert Klein, CPA/ABV/CFF, CVA, CFE, CGMA, and Gerard T. Dolan.

/

/

/

/

Dated:  New York, NY
       April 7, 2016

Respectfully submitted,

NAPOLI SHKOLNIK PLLC


By: _____/s/_ Hunter J. Shkolnik_____
         Hunter J. Shkolnik, Esq.

Hunter J. Shkolnik
Paul J. Napoli
Annie E. Causey
Salvatore C. Badala
1301 Avenue of the Americas, Floor 10
New York, New York 10019
Hunter@napolilaw.com
Pnapoli@napolilaw.com
Acausey@napolilaw.com
Sbadala@napolilaw.com
Tel: (212) 267-3700
Fax: (646) 843-7603

*Attorneys for Plaintiffs and the Putative Class*