UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

DAVID COPELAND and SHERRY COPELAND,
on behalf of themselves and all others similarly
situated,

                 Plaintiffs,

      v.

ALLSTATE INSURANCE COMPANY and
ALLSTATE NEW JERSEY INSURANCE
COMPANY,

                 Defendants.

Civ. No. 14-CV-01556 (AMD)(JO)

### DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION
### TO STRIKE THE EXPERT DECLARATIONS AND
### ATTACHED REPORTS OF CRAIG BARNET, HUBERT KLEIN
### AND GERALD DOLAN REGARDING CLASS-WIDE INJURY OR DAMAGES.

Plaintiff's expert witnesses' testimony was supposedly offered to support Plaintiff's assertion that "classwide evidence…determines injury," a necessary element to establish liability under New York General Business Law § 349. (Dkt. 93, p. 8; *see also* Dkt. 76-8, pp. 7, 15-16, 21.) In one form or another, Plaintiff's experts Barnet, Klein and Dolan all dutifully concluded that a change from Zone A to Zone X "results in a significant overall total annual premium reduction." (Dkt. 76-9, (Barnet Decl., ¶4i).)[1]

But as demonstrated in Allstate's opening Memorandum -- and not disputed by Plaintiff's Opposition -- a change from Zone A to Zone X does not necessarily result in a reduction in

---

[1] *See also* Dkt. 80 (Dolan Decl., page 14 of 16 ("Insureds in high-risk flood zones pay a higher per dollar cost of insurance in comparison to insureds in a lower-risk flood zone."); Dkt. 76-14 (Klein Decl. Ex. 1), p. 7 of 25 ("…changing from a high-risk flood zone (e.g. Zone A) to a low risk flood zone (e.g. Zone X) results in a lower total premium paid by the policy holder, holding all other rating factors constant.").

payment of premium, for there are a number of other property rating characteristics, such as age of construction and elevation, which must be evaluated for each property to determine whether or not a change in flood zone results in a lower premium. (Dkt. 88, pp. 8-9.)

As shown in Allstate's Memorandum, Mr. Barnet's conclusion was based upon a review of only a very specific property type -- a pre-FIRM primary single or two family residence with and without a basement and a Base Flood Elevation of zero -- while Mr. Klein's conclusion was "adopted" from Mr. Barnet and not based on any independent analysis at all. (Dkt. 88, pp.2-4.) Barnet and Klein wholly failed to analyze the wide variety of other property types that could potentially be included within the proposed class definition ("real property in the State of New York"), and offered no class-wide methodology for identifying which putative class members would have paid excess premium.[2] Dolan's opinion is based upon no analysis, but rather supposedly based upon his "experience." (Dkt. 80, p. 14 of 16.)

Barnet's and Klein's core opinions that a change from a high to a low risk flood zone always results in a lower premium must be stricken because the limited data they rely upon is "simply inadequate to support the conclusions reached…." *Amorgianos v. Amtrak,* 303 F.3d 256, 266 (2d Cir. 2002). Dolan's similar opinion must be stricken because when "the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached and how that experience reliably applies to the facts." *Israel v.*

---

[2] Plaintiff mischaracterizes Ms. Rath's testimony to suggest that "Allstate estimates that 10,000 flood policies in the New York metropolitan area had their flood zone change from Zone A to Zone X." (Dkt. 102, p. 2.) In fact, Ms. Rath testified that Allstate did not know the number of insureds who had their flood zones changed in 2007, but their SFIPs did not reflect the change. (J. Rath Dep. P.144:10-17, Dkt. 76-3.) She estimated that flood zone determinations would have to be run on approximately 10,000 SFIPs to identify such policies. (*Id.,* pp. 144:22-145:11.) That would not, however, identify insureds who "paid excess premiums," which would require yet further policy by policy analysis. (*See* J. Rath Decl. ¶16, Dkt. 90.)

*Spring Industries, Inc.*, No. 98-CV-5106 (ENV)(RML) 2006 WL 3196956 at *2 (E.D.N.Y. 2006). Dolan provides no such explanation.

The failure to consider the universe of property types that might fall within the proposed class definition cannot be justified by the circular assertion that Barnet's and Klein's calculations were "specific to Plaintiff and the Class" which would only include "persons and entities who paid excess premiums." (Dkt. #102, p. 7.) First, nothing in Barnet's report indicates that he was even aware of the proposed class definition -- his first opinion is a categorical conclusion based on any change from Zone A to X. (Dkt. 76-9, ¶4i.) But in any event, Barnet has only identified a limited number of scenarios in which a flood zone change would allegedly cause premiums to go down, which begs the relevant question. For class certification purposes, the issue is not whether some unidentified number of putative class members might have been injured, but whether all putative class members who paid "excess premiums" can be ascertained on a class-wide basis without an individual assessment of each insured property. *See, e.g., Traver v. Lowe's Home Centers, LLC,* Case No. 12-civ.- 3528 (AMD)(PK), 2016 U.S. Dist. LEXIS 26533, at **13-14 (E.D.N.Y. 1, 2016)(Donnely, J.). Barnet does not claim to have identified every putative class member who could have suffered injury, or that injury can be determined on any basis other than a policy-by-policy analysis of the various rating factors. Because Klein's opinion is completely derivative of Barnet's, and not based upon any independent analysis of the impact of flood zone change on premiums for the wide variety of properties that might meet the class definition, it suffers from the same defect.

Nor is there any foundation for Barnet's and Klein's opinions that Allstate can "easily" compute damages for each class member using old versions of rating software, or Dolan's opinion that Allstate through one of its vendors can determine damages for the class simply by

correcting the flood zone of the property. (Dkt. 76-10, p. 10; Dkt. 80, p. 14 of 16.).) Neither Barnet, Klein nor Dolan identified any basis for these conclusions in their reports, and in fact neither Allstate nor its vendors have access to prior versions of rating software going back to 2011. (J. Rath Decl., ¶16, Dkt. 90.) Plaintiff suggests that the opinions have sufficient foundation because they are based upon the witnesses' "experience, knowledge, documents and testimony given in this case " (Dkt. #102, p. 10), but as noted above, if that is the case "the witness must explain how that experience leads to the conclusion reached and how that experience is reliably applied to the facts." *Israel v. Spring Industries, Inc.,* 2006 WL 3196956 at *2. Barnet's, Klein's and Dolan's reports contain no such explanation.

Plaintiff attempts to invent such an explanation by suggesting that the testimony of Phillip Dunn from National Flood Services ("NFS") supports Barnet's, Klein's and Dolan's opinion. (Dkt. 102, pp. 10-11, 14, 17.) But this is simply wrong. First, neither Barnet, Klein nor Dolan could have relied upon Mr. Dunn's testimony because Dunn was deposed *after* their reports were issued. Second, Mr. Dunn did not testify that NFS had access to old versions of rating software. He merely testified that NFS had records from which it could determine historically the amount of premium paid for a particular policy and then compute a refund, if appropriate. (P. Dunn Dep., pp. 135:7-19;124:7-22.) Although Mr. Dunn was not asked during his deposition what would be necessary to complete such an exercise, Ms. Rath, Allstate Principle Flood Coordinator, has testified that it would have to be done by manually reviewing rating information from old versions of the NFIP Flood Insurance Manual (J. Rath Decl., ¶16, Dkt. 90.) No witness has testified that such a process is "easy" or can be done other than on an individual, policy by policy basis.

CONCLUSION

Plaintiff's expert reports were submitted to supposedly demonstrate that proof of class-wide injury was possible based upon the assumption that a change in flood zones from Zone A to Zone X always results in reduced premiums. As demonstrated in Allstate's opening Memorandum -- and not refuted by Plaintiff's Opposition -- such a change in flood zones does not necessarily result in lower premiums. Plaintiff's experts' opinions to the contrary are thus not supported by reliable data or analysis and should be stricken. Plaintiff's experts' conclusory opinions that Allstate can "easily" compute class damages are also without foundation and should be stricken. For all of the reasons set forth in Allstate's opening Memorandum and herein, Allstate's motion to strike should be granted.

Dated: New York, New York  
April 15, 2016

Respectfully submitted,

DENTONS US LLP

By: /s/ Robert H. King, Jr.  
Robert H. King, Jr. (admitted PHV)  
233 South Wacker Drive  
Suite 5900  
Chicago, IL 60606-6361  
Tel: (312) 876-7944  
Fax: (312) 876-7934  
robert.kingjr@dentons.com

Brendan E. Zahner  
1221 Avenue of the Americas  
New York, New York 10020-1089  
Tel: (212) 768-6700  
Fax: (212) 768-6800  
brendan.zahner@dentons.com